IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                                                    CRIMINAL NO. 3:18-CR-82-SA-RP

CEDRIC GORDON                                                          DEFENDANT

ORDER

Now before the Court is the Government's Motion to Reconsider Credibility Finding Contained in Order Sustaining Motion to Suppress [24]. The Defendant has filed a Response [25] opposing the requested relief. The Government has not filed a reply, and the deadline to do so has passed.

*Relevant Factual and Procedural Background*

The Defendant, Cedric Gordon, was indicted for possession, with intent to distribute, methamphetamine; possession of a firearm as a convicted felon; and possession of a firearm in relation to a drug trafficking crime. *See* [1]. The charges stemmed from a search of Gordon's vehicle which was conducted by Desoto County Sheriff's Deputy Robert Forbert after he initiated a traffic stop of Gordon's vehicle on the night of September 9, 2017. Prior to being pulled over, the Defendant was driving south on Highway 51 near Stateline Road at around 10:30 pm. The Defendant drove past Deputy Forbert who, according to his written statement, noticed that the female passenger in the Defendant's vehicle was not wearing a seatbelt. Deputy Forbert followed the vehicle for approximately one or two minutes before initiating a traffic stop because the Defendant's tag lights were out. After initiating the stop, Deputy Forbert claims that he smelled marijuana coming from the vehicle. He then ran the vehicle's tag number, and the Defendant's criminal history came back positive. He subsequently arrested the Defendant and conducted a search of the vehicle which revealed a firearm and controlled substances.

After the Defendant was indicted, he filed a Motion to Suppress [14], arguing that Deputy Forbert did not have reasonable suspicion to initiate the traffic stop. On October 10, 2018, the Court held a suppression hearing. The Court orally granted the Motion to Suppress [14] at the conclusion of the hearing and later entered an Order [22] explaining its reasoning. Particularly, the Court held that Deputy Forbert's testimony regarding his reasonable suspicion for initiating the stop was not credible. The Court specifically held as follows:

> At the hearing on this Motion [14], Deputy Forbert repeatedly contradicted the statements contained in his narrative and provided implausible testimony regarding the reasonable suspicion he had at the time of initiating the traffic stop. For example, Deputy Forbert's narrative stated that he initiated the traffic stop because the vehicle's tag lights were not working, but when questioned by the Court, Deputy Forbert admitted that the Defendant's tag lights were working on the night in question. Instead, Deputy Forbert explained that he initiated the traffic stop because the Defendant's license tag was not illuminated brightly enough. Deputy Forbert claimed that he was unable to read the darkened tag from fifty feet away, as required under the statute. When questioned further by the Court, Deputy Forbert maintained that the tag was too dimly lit to read even forty feet away. However, Deputy Forbert eventually admitted at the hearing that he was able to see that the tag lights were in fact working and that the tag was illuminated once he stopped the vehicle.

> Notably, Deputy Forbert's uncorroborated assertion that the tag was not illuminated is not supported by any facts submitted by the Government and Deputy Forbert's narrative makes no mention of the tag being poorly illuminated. Given the photos and evidence presented, the Court finds Deputy Forbert's contradictory testimony on this matter unreliable.

> The Government also argues that even if the Defendant's tag lights were working properly, Deputy Forbert had reasonable suspicion to initiate a traffic stop because the seatbelt violation alone was sufficient to justify the stop. At the suppression hearing, Deputy Forbert stated that he intended to perform a traffic stop for a seatbelt violation, contrary to narrative he prepared the day of the traffic stop. Deputy Forbert maintained that he had reasonable suspicion to initiate the traffic stop because he was able to see the passenger attempting to put her seatbelt on through the tinted windows. However, when questioned by the Court, Deputy Forbert admitted that the windows were darkly tinted and stated that he did not actually view the passenger without her seatbelt on. Based on the evidence and testimony

2

> presented at the hearing on this matter, the Court finds the evidence of a
> seatbelt violation unconvincing.

Order [22] (internal citations omitted). Based on these findings, the Court suppressed the evidence

and dismissed the Indictment. *See* [23].

*Government's Motion for Reconsideration*

On August 4, 2020—almost two years after the suppression hearing, the Government filed

the present Motion to Reconsider Credibility Finding Contained in Order Sustaining Motion to

Suppress [24]. In its Motion [24], the Government asks the Court to revisit its credibility

determination of Deputy Forbert. While recognizing that the doctrine of *res judicata* prohibits the

Court from revisiting its determination as it pertains to Gordon's case, the Government states that

it desires that the Court reconsider its findings because Deputy Forbert's testimony "may be

needed in the case of *U.S. v. Ray Calvert et al.*, 3:19CR97, presently pending in the Northern

District of Mississippi." [24].

To support its request that the Court reconsider its credibility determination, the

Government contends that the Court was not presented with key evidence at the evidentiary

hearing. The Government recently conducted a reenactment of the events leading up to the stop of

Gordon's vehicle and attached to its Motion various photographs from that reenactment.

According to the Government, the reenactment shows that, using the headlight he claims to have

been using, Deputy Forbert could have seen into Gordon's vehicle on the night in question, making

plausible his explanation that he could see that the passenger was not wearing a seatbelt when they

passed him. Further, the Government contends several other photographs illustrate that when

Deputy Forbert pulled his vehicle up closely behind Gordon's vehicle, the headlights from Deputy

Forbert's vehicle could have overpowered Gordon's tag lights. The Government states that it "is

arguably reasonable that Deputy Forbert, who by then would be focusing his attention on the occupants of the vehicle, would not notice that the tag lights were working." [24].

*Analysis and Discussion*

As an initial matter, the Court notes the lack of authority cited by the Government in its Motion [24]. In fact, other than a passing reference to *Giglio*, the Government cites no authority whatsoever to support its request. It has not cited a single case where a district court has granted, or even given serious consideration to, a request of this nature. The Government's failure to cite authority to support its request is particularly illuminated since the Defendant's Response [25] noted this deficiency, but the Government failed to even file a Reply. The Court expects *all* litigants, including the Government, to provide authority to support any and all requests for relief.

Secondarily, even if its authority to reconsider its findings was not in doubt, the Court would still be skeptical of doing so in this case. As noted above, the Court held a suppression hearing in this case. At the hearing, the Court heard testimony from Deputy Forbert himself and carefully considered that testimony prior to making its ruling. The findings were based upon the numerous contradictory statements that Deputy Forbert made when questioned by defense counsel and the Court during the hearing. In other words, the Court heard testimony from Deputy Forbert himself and found that he was not credible—a reenactment many months later does not change that fact.

Furthermore, the Court must note that, at the suppression hearing, the parties, *including the Government*, were provided an opportunity to present evidence on the pertinent issues of the case. Had the Government desired for the Court to consider evidence related to a reenactment, such evidence should have been presented at that time, particularly if the evidence was "key evidence" as described by the Government in the present Motion [24]. This would have allowed the

Defendant an opportunity to cross-examine any pertinent witnesses and emphasize any perceived deficiencies in the reenactment. The Government chose not to present any such evidence at that time, and the Court is not inclined to now alter its findings based upon a reenactment that occurred almost two years later without the Defendant or his counsel being present.

*Conclusion*

For the reasons set forth above, the Government's request is not well-taken. The Motion [24] is DENIED.

SO ORDERED, this the 24th day of August, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE